Good morning. Good morning. May it please the Court, Tim Warner for Mr. Mayo, the plaintiff. This is a search and seizure case involving a law enforcement contact that our position is at the very outset of law enforcement's contact with Mr. Mayo. It's illegal. And the outset is his detention, which is based on a hunch. The facts of this case were, it's based on a tip from a motel operator who looks out her window and in a parking lot across from her in broad daylight, she sees, she does see something suspicious. She sees four vehicles. The things that were suspicious that she observed were a van, which is not Mr. Mayo's van. She says passing a package to another person in another vehicle not having anything to do with Mr. Mayo. And then after those vehicles leave, she does observe the person in a brown Chevy truck currently wiping down the steering wheel to a vehicle and I guess the outside door handle to the vehicle. Based on this, she contacts a police officer, listens to what she has to say. He calls the police dispatcher, relays this information, giving the description of the vehicles, including the description of Mr. Mayo's vehicle, and he says, go check it out. That was Officer Fritz's instructions to the dispatcher. Send someone out to go check it out because he couldn't go do it. So a patrol officer is sent out to go check it out. The patrol officer does more than check it out. At the outset, he detains Mr. Mayo based on a hunch, based on this unparticularized information, this unparticularized purported connection of Mr. Mayo's vehicle to these people that the manager felt were suspicious. Our position is at the outset that that was improper, that was illegal, and it was an illegal detention that was unparticularized. When do you maintain he became detained for Terry's purposes? When Officer Golding went out, Mr. Mayo was walking to his vehicle. He was contacted by Officer Golding. Officer Golding took his driver's license. He had a Texas driver's license. And then Officer Golding went back to his patrol vehicle and was working in there on his computer. So we contend that he was detained when his license was seized by the officer because, effectively, he couldn't go. He couldn't drive away. His car was there. Legally, he was stuck there at that point. The one argument mentioned by Mr. Wong is that we have somehow not taken into account the train, the experience of a trained officer, and there just simply isn't anything in the record to support a trained officer's take on this information given by the motel manager. There's nothing in the record to suggest that, in the opinion of a trained officer, this is somehow more significant than what it seems, which is not much. So there just isn't that element of a filtering through a trained officer that gives any support to this hunch. All it is is officers acting on a hunch. After the initial detention, chronologically, the officers proceed with some other investigations. After the detention, it's discovered that the license plate has a license tab. It looks good. It looks valid. The officers say it's a valid tab, but it doesn't match with the license. There is an investigation that's done concerning the tab. Questions are asked to Mr. Mayo concerning the tab. We submit that his responses did not increase any suspicion on him and, in fact, deferred any suspicion. He said he just purchased the vehicle. He wasn't the registered owner. There was no thought that he had stolen the vehicle. Then it's Officer Fritz, who's a narcotics officer, comes up, and then a narcotics investigation begins. Officer Fritz says he apparently smells some methamphetamine smell, and that begins. But at a point, the investigation becomes prolonged, and the point that the court should look to, there is an issue about the investigation turns into whether or not Mr. Mayo could use this credit card, which is somebody else's credit card, Mr. Bindi's credit card. Mr. Bindi arrives, and Mr. Bindi says it was okay to use the credit card. At that point, to detain Mr. Mayo any further is incorrect. The officers have exhausted all of their investigative leads, and Mr. Mayo should have been free to go, but he wasn't. He was held there. A search of Mr. Bindi's vehicle was done. Mr. Mayo was asked repeatedly for consent to search his vehicle, and Mr. Mayo repeatedly refused consent. And then finally, at the end of all that, the officer says, look, this could be easy or this could be hard. If you let us search the vehicle, we won't arrest you. But if you continue to refuse, we're going to have to arrest you. The officers, they put him in this position of, in essence, it's a threat. They're threatening to arrest him unless he gives up his rights to refuse a search. And the officers, Mr. Wong is relying on, they're saying there's probable cause, because he could have been arrested for these false tags. At some point in the string of facts you're describing, the officers determined, did they not, that that tag was stolen? No. The evidence in the record is that they determined that the tag did not match the actual license plate. The officer stated that the tag appeared valid. It appeared to be a valid tag. There was no evidence that it was a stolen tag, just that the tag was improperly placed on the plate, making it appear to be street legal when it wasn't. It just didn't belong to that vehicle. So there isn't any other determination. Excuse me? How did they make that determination? They made that determination when- By calling in the number? Right, right. And that was done when they punched in the license plate and it didn't match up. So they had to rely on this computer information. This is information that's held by DMV to expect somebody who's just driving the vehicle, he's not the registered owner of the vehicle, as he explains, look, I'm in the process of buying the vehicle, I'm not the registered owner. And they're saying, hey, you know, we're going to arrest you for this felony because this tag doesn't match up to the license plate. I don't think the standard for probable cause, being a prudent officer, I think that Mr. Mayo stands in the position of an innocent, apparently innocent person who's driving a vehicle that appears street legal, and to say that he should have known and that there's a reason to arrest him because his tag doesn't match up to the plate. I don't think it's there. And I think that there is no probable cause for arrest. Any questions? I don't see any more questions right now. I'm going to reserve any additional time. Thank you. Surely. Mr. Wong? May it please the Court, Norm Wong, United States. This case shows how officers are faced with changing situations in the field and how they need to respond to the situation as it arises when they get out there. In this case, this whole call was initiated by a motel manager who called about suspicious activity occurring in her parking lot. Now, Officer Fritz was the one who took this call. And Officer Fritz testified that this was an area that he had known had problems with narcotics activity. Fritz was the one who got the original tip? Who got the original call. From the motel manager. From the motel manager. He was the narcotics officer. He received the call. The motel manager told him what happened, which was a group of cars came into the parking lot, including the silver Honda driven by the defendant in this case. The occupants of the cars, all the cars, including the silver Honda, got out and congregated around the silver Dodge. And that's when the passing of the object occurred between two of the cars, not Mr. Mayo's car. And that was the basis for the motel manager to call in and say, I think there's a narcotics activity going on. Now, Officer Fritz testified that this was an area, this I-5 corridor in Stockton, where they'd been having problems with narcotics activity at these motels. And so he knew this to be a high-crime area. He had gone out. He had received two calls from this motel manager before regarding narcotics activity. They had been out to this area before and had met with motel managers in that area regarding narcotics activity. So this is an area where he knows this occurs. He gets a call, a specific call from the manager of the motel saying this is happening. And so they send a patrol unit out there to investigate. Officer Fritz does come later, but he has to finish up the matter he's working on at the time. So then we turn to Officer Golden. He has the information that this is a suspected narcotics call. And he goes out there to see what's going on. The first thing he sees is Mr. Mayo's Honda, which was identified by the motel manager. So he thinks, okay, this car was part of the narcotics activity or a suspected narcotics activity. And he punches in the license plate before he gets out of the car to confront Mr. Mayo. At that point, he gets out of the car and confronts Mr. Mayo and they have some small talk and he says, I'm here to investigate. And he takes the license plate and the vehicle sales license. He goes back to his car, checks the license, and realizes that the license plate, the registration on the car is actually expired in 1999, although the sticker, the little tab on the license plate says 2003. So at that point, the circumstances now change from a narcotics investigation into the license plate investigation. And both still need to be investigated. And as things develop further, as Officer Fritz approaches and talks to the motel manager, the third instance comes up, which is the use of the credit card at the motel by Mr. Mayo. And that credit card was in Mr. Bindi's name, so there's a question about whether Mr. Mayo has the authority to use the credit card. So that's the third instance that needs to be investigated by these officers. When Officer Fritz and his partner approach Mr. Mayo, they smell methamphetamine, the smell of the methamphetamine lab, and Officer Fritz testified that he had been involved in about a thousand narcotics investigations. So he recognizes the smell, and that's the fourth thing that has to be investigated. During the course of this time, Mr. Bindi, who was the co-defendant in this case, comes back, arrives again, and the officers say, well, where did you come from? And Mr. Bindi points out a car that's parked behind some bushes, and they realize that's one of the cars that was part of the initial motel manager's call. So this is the fifth thing that has to be investigated. And all this points to more than reasonable suspicion that the officers can detain Mr. Mayo for the purpose of investigating each of these issues. How long was it from the time that Bindi arrived till the time they actually affected the arrest? Does the record reflect that or not? I don't believe the record reflects that particular time period. The time from the point that Officer Golden arrived to the time that the arrest occurred, the entire encounter was I think 20 to 25 minutes was the estimate, and that's not really a disputed estimate. It could be from 20 to 30 minutes for this entire investigation,  that's not an unduly long detention. Now, as far as the registration goes, the officers found that there was probable cause or determined that there was probable cause that Mr. Mayo knew that this tab was on there and that this was an expired tab. The ownership of the car is not disputed. Mr. Mayo said, this is my car. I purchased it about a month ago. There seems to be a small factual dispute between whether he was purchasing the car or whether he had purchased the car, completed the purchase. Officer Golden is the one who said that Mayo told him he was in the process of purchasing it. We don't really know what that means, but Officer Fritz said, and he checked his report and he said Mr. Mayo said he had finished purchasing the car. So it was a purchased car about a month ago. Now, Mr. Mayo also had a vehicle sales license, which gave the officer probable cause that Mr. Mayo knew about the registration requirements of cars and knew that after you buy a car, you have to submit paperwork and pay a fee to transfer the car based on the vehicle sales license. In addition to that, the car was last registered in 1999, and that is a significant factor in that the car was last registered in 1999 to Mr. Tomei. And during the investigation, Officer Golden does learn from Mr. Mayo that he purchased the car from a person named Tomei, but that was a month ago. But that leaves the inference that Mr. Mayo had been driving around with this car since 1999 without changing the registration. So all those facts together create the fair probability that Mr. Mayo knew that this tab was on there, that it was expired, and that he let it stay on there, and that's the probable cause that Mr. Mayo had committed the crime. Now, the following search incident to the crime was one of the focuses I had on this case because it's an issue which has not been addressed by this court, but has been addressed by at least five other circuits, and that is the issue of whether a hatchback falls within the passenger compartment of the car or whether a hatchback area falls within the trunk of a car. And I've laid it out in the government's brief, and we urge the court to follow the rulings of these other circuits in holding that the hatchback area is more like the passenger compartment because it is reachable from the inside of the car without getting out to walk around and pop the trunk and get into it. In the Doward case, one of the significant factors pointed out by that court was that you don't have to dismantle the car in any way to reach the rear area of the hatchback from the inside of the car, unlike a traditional trunk, which requires you either to take out the backseat, remove the backseat, or somehow dismantle the car to access it from the inside of the passenger compartment. A hatchback area typically can be reached right back and pull something out of the hatchback area from the passenger compartment, or in some instances there is a retractable cover or some sort of thin cover that can also be easily snapped right out and access to the hatchback area can be reached. In his reply brief, Mr. Mayo points out that there was no evidence in this case whether the hatchback area was covered or uncovered, and there are two cases that stand for the two other circuits that have held that that should not be an issue whether a hatchback area is covered or uncovered because you want to establish a bright line rule for officers to follow and not have to get into individualized details of whether a hatchback area is actually reachable. Was this argument raised in the district court? That was going to be my next point, which was the covered versus uncovered issue was not raised in the district court. That's only raised in the briefs on this appeal, so there was no chance to develop a record below as far as whether it was a covered or uncovered hatchback. The issue below is whether a hatchback area in general falls into the passenger or the trunk component, and for the reasons I've already stated, it's the government's position that it falls within the passenger compartment and is a searchable incident to an arrest. I think I've laid everything else out in the briefs, and if there aren't any questions. I don't think there are any other questions. Thank you. Thank you. Mr. Warner. Thank you. Just on the issue of the this being some sort of a narcotics area, the officer did mention that they had had issues involving hotels in this I-5 corridor. The issues, as he specified at the hearing, were with what are called short-stay traffic, people spending the night doing drugs, prostitution involved. And I point out in my brief that this whole, what the manager observed, everything that this contact was based on occurred in broad daylight. I think it was noontime, and it's in a parking lot. It's not in a motel room. It's in a parking lot that she has a view from her office. So the circumstances are not akin to this short-stay traffic, and these are people that are out in the open in broad daylight in public. We submit that in terms of the detention, all you have is Mr. Mayo's, the mere presence of his vehicle with a couple other, with some other vehicles, but no direct, particularized suspicion that relates to Mr. Mayo or Mr. Mayo's vehicle, just the mere presence of his vehicles is what is being relied on. That's it. Thank you. All right. Thank you both. Counsel, the matter just argued will be submitted. We will turn next to United States v. Simmons.
judges: Canby, Rymer, Hawkins